FARMERS' BANK OF GREENWOOD *v.* MACKEY & GILLEN COAL COMPANY.

Opinion delivered March 3, 1930.

*A. M. Dobbs,* for appellant.
*Warner & Warner,* for appellee.

BUTLER, J. Mackey & Gillen Coal Company, appellee, sold eleven cars of coal of the value of $1,663.50 to one W. C. Candle who was engaged in the business of

buying and selling coal. Caudle did business with the Farmers' Bank of Greenwood, appellant garnishee. On May 25, 1929, the purchase price for the coal aforesaid remaining unpaid, the appellee brought suit against Caudle, and garnished the Bank of Greenwood, alleging that the garnishee was indebted to the defendant Caudle in the sum of $2,100, and that it had in its hands and possession goods, chattels, moneys, credits and effects belonging to said defendant of said value, and propounded interrogatories seeking to elicit proof of these allegations.

On the 13th of June, the garnishee filed its answer denying that it was indebted to Caudle in any sum, except $2.90, or that it had in its hands any credits and effects belonging to the defendant except the sum named. A denial to the answer was filed on July 1, 1929, and on said day the cause came on for trial which resulted in a verdict in favor of the plaintiff against the defendant and garnishee for the sum sued for. The garnishee defended on the ground that, while on the date of the issuance of the garnishment it had in its hands, or before the return day for its answer to the garnishment, a sufficient sum to the credit of Caudle on its books to pay the judgment, this was not in reality the property of Caudle, but was held by the bank as a special fund to secure the payment of certain indebtedness due by Caudle for money advanced in the following manner: that in January preceding it had an arrangement with Caudle by which it was to handle the invoices of coal bought by Caudle, and by him sold to other parties; that these invoices were pledged as collateral security to the bank, the bank advancing 85 per cent. to Caudle at the time of their delivery with the understanding, that when the invoices were paid 85 per cent. should be applied to the payment of the indebtedness then existing, and 15 per cent. should be placed in a special account to secure the money advanced for invoices, the amount of which had not yet been collected.

On trial of the case the cashier of the bank testified as to the above state of facts and understanding, and stated further that on the 24th day of May there was the sum of $1,477.05 in the special account, and that since that date he had collected $367.58, making a total of $1,844.63; that on the 18th day of June he checked against this special account to pay the bank for the amount of the debt owed on the invoices; that he drew this because he thought he had a right to do so; that on the day that he testified in court, July 1, 1929, Caudle was not indebted to the bank in the matter of the invoices, and that he had on hand in the bank belonging to Caudle invoices of the face value of $1,807.61, and cash sufficient to make a total of $1,974.55, and that the bank was not entitled to such invoices or such cash.

There was other testimony tending to show that, at the time the appellee was about to sell the coal to Caudle, its representative called on the bank, and the cashier stated, in reference to paying for the coal, that the bank would pay it when it collected the bills of lading, and that Caudle would have $2,100 to his credit if nothing was lost on the invoices. The cashier of the bank was asked how many of the invoices of the eleven cars of coal had been paid for, and stated that he could not tell without his books. Later, after having got the books, he still did not say whether any of these invoices for the eleven cars of coal had been paid, or, if so, how many. Therefore, we cannot gather from the testimony whether the bank ever collected any of the invoices of appellee or not, but this, in view of the statement of the cashier as to the state of Caudle's account on July 1, 1929, we deem unimportant.

The court gave the following instruction for the plaintiff: "If you find that the time of the service of the garnishment herein, or thereafter, the Farmers' Bank had in its possession or under its control any goods, chattels, moneys, credits or effects belonging to the said defendant, or if the said bank was indebted to the said

defendant in any sum or amount, then you are instructed that plaintiffs would be entitled to recover from said bank for the amount thereof, if any, not to exceed the amount of the indebtedness due from defendant to the plaintiff.''

The court refused to instruct the jury at the request of the defendant as follows: ''You are instructed that you should find against the garnishee in whatever sum the bank admits that it has in its possession belonging to W. C. Caudle, but it is not your duty to find against the Farmers' Bank in any sum for the money that, W. C. Caudle has stipulated and agreed that the Farmers' Bank shall hold to protect itself against any loss or claim that may be made against W. C. Caudle for the reason that under the law the bank would be entitled to hold whatever per cent. that was agreed to between the defendant Caudle and the bank, in order to protect the bank until all cars shipped under this agreement were finally paid for under the contract above mentioned.''

The giving and refusing of the above instructions the appellant assigns as error. We do not think, under the facts in this case, that the appellant's position is well taken, nor do we think the authorities cited by the appellant have any application. The only question before the jury was, did the garnishee bank have in its possession at that time any credits or effects to which the defendant Caudle was entitled? This question was answered by the garnishee bank itself in the testimony of its cashier to the effect that there were invoices in its hands amounting to more than $1,800, and cash making the total sum about $1,900. In view of this testimony, we think the instruction given for the plaintiff was correct, and that requested by the defendant properly refused.

It is argued by the appellant that the invoices in the bank were not money, and that the court might, by some order, have impounded them for the benefit of the appellee, and that it would be manifestly unjust to render a money judgment upon assigned invoices which may never

be collected. The answer to this argument is that the statute has provided for just such a contingency. Section 4914 of C. & M. Digest provides that the garnishee may surrender the chattels, moneys, credits or effects in its hands belonging to the defendant to the plaintiff, and in the case of *Patterson* v. *Harland,* 12 Ark. 158-163, the court, referring to this statute which was then in effect, said: ''The last section quoted, it will be perceived, gives the garnishee an election either to surrender or to retain the goods and effects, and in case he shall choose to make the surrender, he is thereby entitled to a release from all responsibility in relation thereto. It is very clear that he makes his election at his peril, and that, in case he shall fail to avail himself of his privilege to surrender on the return day of the writ, he is liable for the value of the property found in his possession belonging to the judgment debtor, at least to the extent of the judgment in case it shall amount to so much.'' It will be seen that on the return day of the writ the appellant had in its hands credits, effects and cash more than sufficient to pay appellee's claim, and indeed, it has not been shown that such invoices were not worth their face value.

Finding no error, the judgment will be affirmed.